## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2610 | **DATE** | 3/23/2004 |
| **CASE TITLE** | Lorenzo Alvarez vs. Hi-Temp, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendants' motion to strike certain paragraphs and to dismiss counts II and III of plaintiff's second amended complaint [24-1] [24-2] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LORENZO ALVAREZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03 C 2610 ) |
| HI-TEMP INCORPORATED and JAMES MIKODA, Individually | ) Magistrate Judge Nan R. Nolan ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Lorenzo Alvarez sued his former employer, defendant Hi-Temp Incorporated, and Hi-Temp's plant manager, defendant James Mikoda, alleging that (i) defendants unlawfully refused to permit him to take a leave of absence from work, or to reschedule his vacation, in order to be with his pregnant wife who was experiencing serious medical complications, and (ii) subsequently discharged him after he took a leave of absence without defendants' authorization. In his second amended complaint, Alvarez raises a federal claim against both defendants for violating the Family and Medical Leave Act of 1993 ("FMLA") 29 U.S.C. § 2601, *et seq.*, and also brings a state common law claim for tortious interference with contractual relations against Mikoda and a state common law claim for negligent supervision against Hi-Temp. Before the court is the defendants' motion to dismiss the state law claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and to strike certain allegations from the complaint under Rule 12(f). Mikoda argues that the claim for tortious interference with contractual relations raised in Count II is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Alternatively, Mikoda contends that Alvarez fails to state a claim.

As for the negligent supervision claim raised in Count III, Hi-Temp asserts that it is preempted by both the FMLA and the Illinois Worker's Compensation Act ("IWCA"), 820 ILCS §§ 305/5(a), 305/11. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, defendants' motion to dismiss Counts II and III is granted but their motion to strike is denied.

I. Analysis

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When evaluating a motion to dismiss under Rule 12(b)(6), courts must accept the well-pled allegations of a complaint as true and construe any ambiguities in favor of the plaintiff. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). If federal law preempts a state law claim, however, the state law claim must be dismissed. *O'Hern v. Delta Airlines, Inc.*, 838 F. Supp. 1264, 1266 (N.D. Ill. 1993). Whether a state law claim is preempted depends on the congressional intent and purpose underlying the federal statute. *Gade v. Nat'l Solid Wastes Mgmt. Assoc.*, 505 U.S. 88, 96 (1992). Preemption "may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Id.* at 98.

A. Tortious Interference with Contractual Relations

The court agrees with Mikoda that § 301 of the LMRA preempts Alvarez's claim for tortious interference with contractual relations. Alvarez's employment contract is the collective bargaining agreement covering his union. Seventh Circuit law is clear that "[w]hen a worker is

2

covered by a collective bargaining contract, he must . . . litigate any legal dispute with his employer as a breach of that contract."[1] *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 725 (7th Cir. 2000). The worker may not bring a state law breach of contract claim, nor may he recharacterize his claim as one for tortious interference with contract against his supervisor—such claims are preempted. *Id.* at 725-727.

This result is logical given that the purpose of preemption under § 301 is to maintain consistency in interpreting collective bargaining agreements. *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283, 286 (7th Cir. 2001) (a collective bargaining agreement "should not have different meanings under federal law and the laws of various states"). The existence of a collective bargaining agreement does not mean that preemption of state law claims automatically follows. Rather, a state law claim is preempted if resolution of the claim requires interpretation of a collective bargaining agreement. *Id.* at 285. Here, a necessary element of Alvarez's claim for tortious interference with contractual relations is that Hi-Temp breached its contract with Alvarez as the result of Mikoda's wrongful actions. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (stating elements of claim); *Quadro Enter., Inc. v. Avery Dennison Corp.*, No. 97 C 5402, 2000 WL 1029176, at *9 (N.D. Ill. July 26, 2000) (no claim for tortious interference if no underlying breach); *Pfendler v. Anshe Emet Day School*, 401 N.E.2d 1094, 1098 (Ill. App. Ct. 1980) (same). Establishing whether there was a breach of the collective bargaining contract necessarily requires interpretation of that contract, so Alvarez's claim is preempted. *E.g., Carroll v. Commonwealth Edison, Co.*, No. 97 C 1994, 1997 WL 428528, at * 4 (N.D. Ill. July 24, 1997).

---

[1]The exceptions to this rule are not relevant here. *See Kimbro*, 215 F.3d at 725.

Alvarez makes no real effort to persuade the court otherwise. Instead, he argues that he pled in the alternative, raising a claim for both tortious interference with contractual relations and tortious interference with employment relationship—known under Illinois law as tortious interference with prospective economic advantage.[2] The problem with this argument is that "the tort of intentional interference with prospective economic advantage 'is concerned only with intentional interference with prospective contractual relations [that are] *not yet reduced to contract*.'" *Stomper v. Chicago Transit Auth.*, No. 96 C 1849, 1997 WL 177844, at *5 (N.D. Ill. Apr. 4, 1997). Alvarez's expectations in continued employment with Hi-Temp were reduced to an employment contract—the collective bargaining agreement. "An existing [contractual] agreement precludes an action for intentional interference with prospective economic advantage."[3] *Delphi Indus., Inc. v. Stroh Brewery Co.*, 945 F.2d 215, 221 (7th Cir. 1991). Because a contractual relationship already exists, Alvarez "must allege 'tortious interference with a contract rather than a prospective business advantage.'"[4] *Stomper*, 1997 WL 177844, at *5.

---

[2]Under Illinois law, the elements of this related tort are: "(1) [plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 370 (Ill. 1998) (internal quotation marks and citation omitted).

[3]Alvarez relies on *Dorado v. Aargus Security Systems, Inc.*, No. 00 C 4002, 2002 WL 230776, at *5 (N.D. Ill. Feb. 14, 2002) to support his argument that his tortious interference with prospective economic advantage claim should survive dismissal. That decision is unpersuasive, given that the *Dorado* court did not consider the rulings in either *Delphi*, 945 F.2d at 221, or *Stomper*, 1997 WL 177844, at *5.

[4]In *Emery v. Northeast Illinois Regional Commuter Railroad Corp.*, No. 02 C 9393, 2003 WL 22176077, at *9-10 (N.D. Ill. Sept. 18, 2003), a case cited by Alvarez, the court did not hold otherwise. In *Emery*, the plaintiff's claim for tortious interference with prospective economic advantage was based solely on business relationships that had not been reduced to contract. *Id.*

4

This result makes sense, particularly in the context of this case. As explained above, a worker who is employed under a collective bargaining agreement cannot avoid preemption by casting his claim as one for tortious interference with contractual relations. *Kimbro*, 215 F.3d at 725. Similarly, that same employee should not be able to proceed under a theory of tortious interference with prospective economic advantage when there is an existing contract, and in doing so, escape federal preemption.

The only claim properly raised against Mikoda in Count II was tortious interference with contractual relations, which is preempted by the LMRA.[5] Count II is dismissed.

### B. Negligent Supervision against Hi-Temp

Hi-Temp argues that both the FMLA and the IWCA preempt Alvarez's negligent supervision claim. For the reasons explained below, the court grants the motion to dismiss as it relates Count III without reaching the issue of IWCA preemption.

#### 1. FMLA Preemption

Hi-Temp contends that Alvarez's negligent supervision claim,[6] which is based on a violation of the FMLA, is preempted by the FMLA. Alvarez disagrees on several grounds. First, he disputes Hi-Temp's position that the FMLA is the sole remedy available for FMLA violations.

---

[5]The court therefore need not address Mikoda's alternative argument that Alvarez fails to state a claim.

[6]Alvarez's negligent supervision claim against Hi-Temp is premised on allegations that Hi-Temp failed to inform or train Mikoda and other supervisors "about their obligations under the law, including the FMLA, or about the company's leave and vacation policies in general," that Hi-Temp knew that Mikoda "had on a prior occasion wrongfully refused to grant at least one other employee a leave of absence," that Hi-Temp nevertheless failed and refused to oversee and train its supervisors about the requirements of the FMLA, that Hi-Temp knew or should have known that its supervisors would be "unfit to perform the duties required of them under the FMLA specifically and state and federal employment laws generally," and that the supervisors, due to their lack of fitness for the positions, caused Alvarez's termination from Hi-Temp. (Sec. Am. Cmp. ¶¶ 43-48.)

5

Second, he contends that his negligent supervision claim is based on more than a violation of the FMLA. According to Alvarez, his claim is also based on Hi-Temp's failure to properly supervise Mikoda (1) to ensure that he properly followed Hi-Temp's leave and vacation policies; and (2) to ensure that he would not interfere with terminated employees' rights to unemployment compensation. (*See generally* Pl.'s Mem. Resp. to Defs.' Supp. Mem. at 2-4.) The court addresses these arguments in turn.

        *a.*      *Negligent Supervision Claim Based On Violation of the FMLA*

The first issue is whether the FMLA preempts a negligent supervision claim based on a violation of the FMLA. Neither the Seventh Circuit nor any court in this circuit has addressed this issue yet. After careful consideration of cases from other jurisdictions as well as the statute itself, the court concludes that a negligent supervision claim premised on a violation of a right created by the FMLA is preempted.

Preemption may be express or implied. Unless the statute contains explicit preemptive language (which the FMLA does not), the Supreme Court has recognized two forms of implied preemption: field preemption and conflict preemption. *Gade*, 505 U.S. at 98. A federal statute preempts a field if the scheme of federal regulation is "'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[.]'" *Id.* Conflict preemption, on the other hand, occurs "'where compliance with both federal and state regulations is a physical impossibility' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (internal citations omitted).

In *Kiely v. University of Pittsburgh Medical Center*, No. 98-1536, 2000 WL 262580

(W.D. Pa. Jan. 20, 2000),[7] the court found that Congress created a comprehensive scheme to provide remedies for violations of the FMLA, and consequently held that the FMLA preempted plaintiff's negligent supervision claim based on an FMLA violation.[8] The *Kiely* court discussed the different types of preemption, but did not identify whether its ruling was based on field or conflict preemption.[9] This court agrees with the *Kiely* court's conclusion, but finds that further explanation is warranted.

Field preemption, or complete preemption, is not at issue here. "The number of statutes that completely preempt their respective fields is limited." *Bellido-Sullivan v. Am. Int'l Group, Inc.*, 123 F. Supp. 2d 161, 165 (S.D.N.Y. 2000) (holding that FMLA does not completely preempt state law); *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (explaining that field preemption is also known as complete preemption). Through the FMLA's savings clause, Congress explicitly left room for the states to provide family and medical leave rights above and beyond those provided by the FMLA. Section 2651(b) of the FMLA provides that "[n]othing in this Act or any amendment made to this Act shall be construed to supercede any provision of any State or local law that provides greater family or medical leave rights than the rights established

---

[7] Publication page citations are not available for this opinion.

[8] Hi-Temp contends that the court in *Rosania v. Taco Bell of America, Inc.*, No. 3:03 CV 7525, 2004 WL 343515, at *1 (N.D. Ohio Feb. 23, 2004) reached the same conclusion. That contention, however, is inaccurate. The *Rosania* court never addressed whether the FMLA preempted plaintiff's negligent supervision claim because the parties stipulated to the dismissal of that claim. *Id.* at * 1. Instead, the *Rosania* court's ruling related to a motion to dismiss certain aspects of plaintiff's prayer for relief, *i.e.*, her claims for compensatory and consequential damages, emotional distress, and punitive damages. *Id.* at *2. The court dismissed those damages claims, reasoning that § 2617(a) of the FMLA "provides the exclusive remedies for an employer's violation of the FMLA." *Id.*

[9] The court assumes that the *Kiely* court's decision was not based on express preemption, given the lack of explicit preemptive language in the FMLA.

7

under this Act or any amendment made by this Act." 29 U.S.C. § 2651(b). Based on the plain language of the savings clause, the court finds no reasonable basis to infer that Congress intended to completely occupy the field of regulation relating to family and medical leave rights.

Although the savings clause clearly "allows states to provide additional substantive leave rights," it does not follow that states may "provide additional remedies for FMLA violations." *Desrochers v. Hilton Hotels Corp.*, 28 F. Supp. 2d 693, 695 n. 1 (D. Mass. 1998). Congress made certain damages available to remedy violations of employees' FMLA rights. Those remedies include (i) damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation,"or, if no such losses occurred, damages for "any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to the sum equal to 12 weeks of wages or salary for the employee," (ii) interest, and (iii) liquidated damages equal to the sum of the amount described in (i) and (ii).[10] 29 U.S.C. § 2617(a)(1)(A) (i-iii). Equitable relief, such as employment, promotion, or reinstatement, may also be awarded. 29 U.S.C. § 2617(1)(B).

The remedies available under the FMLA do not include damages for emotional distress or punitive damages.[11] *See, e.g., Montgomery v. Maryland*, No. 02-1998, 2003 WL 21752919, at *2 (4th Cir. July 30, 2003) (unpublished ruling) (emotional distress damages not available); *Graham*

---

[10]The court has discretion to reduce the amount of liquidated damages and interest awarded in the event the employer proves that the FMLA violation was committed "in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation[.]" 29 U.S.C. § 2617(a)(1)(A)(iii).

[11]The compensatory damages available under the FMLA are limited to the categories of damages identified in 29 U.S.C. § 2617(a)(1)(A)(i)(I). *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1998); *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 930 (5th Cir. 1999) ("§ 2617(a)(1) does not provide for recovery of general or consequential damages").

8

*v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999) (same); *Harrington-Grant v. Loomis, Fargo & Co.*, No. 01 C 6344, 2002 WL 47152, at *6 (N.D. Ill. Jan. 11, 2002) (punitive damages not available); *Divizio v. Elmwood Care, Inc.*, No. 97 C 8365, 1998 WL 292982, at *4 (N.D. Ill. May 28, 1998) (same); *McAnnally v. Wyn South Molded Products, Inc.*, 912 F. Supp. 512, 513 (N.D. Ala. 1996) (neither punitive nor emotional distress damages available). Yet if the negligent supervision claim based on a violation of rights created by the FMLA is allowed to proceed and Alvarez prevails, he potentially could recover compensatory damages, including damages for emotional distress, as well as punitive damages. Making those remedies available to Alvarez through a tort claim to rectify an FMLA violation when such remedies are precluded under the FMLA would circumvent the remedial scheme Congress devised to accomplish the FMLA's objectives.

Numerous courts have found that Congress intended the "specific remedies set forth in § 2617 [to] be the exclusive remedies available for a violation of the FMLA." *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 895 (S.D. Ohio 1998) (§ 1983 action premised on FMLA violation foreclosed); *Kiely*, 2000 WL 262580 (negligent supervision claim preempted); *Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 419 (M.D. Penn. 1999) (§ 1983 action premised on FMLA violation); *Clay v. City of Chicago, Dep't of Health*, No. 96 C 3684, 1996 WL 613164, at *2 (N.D. Ill. Oct. 22, 1996) (defendant conceded that due to FMLA's comprehensive enforcement scheme, § 1983 claim was not available to remedy FMLA violation); *but see Knussman v. State of Maryland*, 16 F. Supp. 2d 601, 610 (D. Md. 1998) (allowing § 1983 claim based on violation of FMLA). As the *O'Hara* court reasoned, "it would be anomalous to hold that when the only unlawful employment practice consists of a

9

violation of the FMLA, the plaintiff can bypass the restrictions on the plaintiff's right to bring and maintain the action under the FMLA by framing the cause of action as one brought under § 1983." 16 F. Supp. 2d at 894 (discussing certain administrative restrictions, not restrictions on available remedies).

Likewise, it would be anomalous to allow a plaintiff to bypass the limitations Congress placed on remedies for FMLA violations by permitting a common law tort claim to proceed premised solely on an FMLA violation. Allowing a plaintiff to pursue damages that are precluded by the FMLA conflicts with "the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98 (internal quotation marks omitted). Significantly, the FMLA *created* Alvarez's rights to take family and medical leave. The FMLA also provides a comprehensive remedial scheme to enforce those rights. Accordingly, Alvarez's legal recourse for violations of those rights is limited to the damages available under the FMLA. *E.g., Kiely*, 2000 WL 262580; *O'Hara*, 16 F. Supp. 2d at 894; *see Alexander v. Chicago Park District*, 773 F.2d 850, 855 (7th Cir. 1985) (legal recourse for violations of rights created by Title VII is through Title VII); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) (no § 1983 cause of action where claim is based solely on a Title VII violation). To the extent Alvarez's negligent supervision claim is premised on the violation of a right created by the FMLA, that claim is barred under the doctrine of conflict preemption.

          *b.*     *Negligent Supervision Claim Based On Other Violations*

According to Alvarez, his negligent supervision claim is premised on more than an FMLA violation—it is also based on Hi-Temp's failure to supervise Mikoda to ensure that he properly followed Hi-Temp's general leave and vacation policies. For Hi-Temp to be liable for

10

negligent supervision, Mikoda "must have committed an independently actionable wrong." *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 958 (N.D. Ill. 2002). Thus, Alvarez must show that Mikoda violated the general leave and vacation policies. The problem for Alvarez is that those policies are part of the union's collective bargaining agreement. Determining whether Mikoda's conduct violated the contractual leave and vacation policies requires interpretation of the collective bargaining agreement. To the extent Alvarez's negligent supervision claim is based on a violation of the contractual leave and vacation policies, his claim is preempted by § 301 of the LMRA.[12] *See In re Bentz Metal Products Co., Inc.*, 253 F.3d at 285 (state law claim preempted if resolution requires interpretation of collective bargaining agreement).

Additionally, Alvarez contends that his negligent supervision claim is based on Hi-Temp's failure to supervise Mikoda to ensure that he would not interfere with terminated employees' rights to unemployment compensation. According to Alvarez, Mikoda intentionally and wrongfully characterized his termination as a voluntary resignation in an effort to prevent him from collecting unemployment, (*see* Sec. Am. Compl. ¶¶ 19, 24), and Hi-Temp negligently failed to prevent Mikoda from doing so.[13] This strikes the court as an inappropriate application

---

[12]Although the parties did not raise the issue in their briefs, this conclusion is evident based on their LMRA preemption arguments relating to Count I.

[13]Notably, nowhere does Alvarez contend that he was denied unemployment benefits as the result of his termination being labeled a voluntary resignation. Nor is it likely that he could make (let alone prove) such an allegation. A terminated employee's eligibility for unemployment benefits depends on the Illinois Unemployment Insurance Act ("IUIA"), not on whether the employer designates the employee's departure as a voluntary quit. *Grigoleit Co. v. Dep't of Employment Security*, 669 N.E.2d 105, 109 (Ill. App. Ct. 1996). Under § 601 of the IUIA, an individual is not eligible for benefits if he leaves work "voluntarily without good cause attributable" to the employer. 820 ILCS 405/601(A). But under the express language of the statute, § 601 does not apply to an individual who voluntarily leaves work to care for a spouse who is in poor physical health, provided that the individual does so based on

11

of the tort of negligent supervision. *Garcia v. Allen*, 28 S.W.3d 587, 592 (Ct. App. Tex. 2000).

Under Illinois law, a negligent supervision claim is viable if "(1) [the] employer had a duty to supervise its employees, (2) the employer negligently supervised an employee, and (3) such negligence proximately caused the plaintiff's injuries." *Van Horne v. Muller*, 691 N.E.2d 74, 79 (Ill. App. Ct. 1998), *rev'd in part on other grounds*, 705 N.E.2d 898 (Ill. 1999). Relying on *Hills v. Bridgeview Little League Assoc.*, 745 N.E.2d 1166, 1179 (Ill. 2000), Alvarez argues that Hi-Temp had a "duty to exercise reasonable care to ensure that its employees do not intentionally harm others."[14] (Resp. at 12.) In *Hills*, the intentional harm at issue was a physical beating, not the termination of someone's employment. There are no reported Illinois cases in which a plaintiff brought a negligent supervision claim where the alleged injury was termination of employment. Courts in other jurisdictions have held that "[t]he claim is not available in an action for wrongful termination, where an employee contends that his employer failed to adequately oversee his immediate supervisors." *Day v. Excel Corp.*, No. 94-1439-JTM, 1996 WL 294341, at *14 (D. Kan. May 17, 1996); *Garcia*, 28 S.W.3d at 592 (holding that "employers do not have a duty to supervise their employees in a manner that prevents other employees from being terminated without sufficient justification"). The court is therefore skeptical whether an Illinois court would extend the tort of negligent supervision to encompass Alvarez's claim.

---

the advice of a physician and notifies his employer of the reason for his absence. 820 ILCS 405/601(B)(1).

[14]Alvarez also argues that Hi-Temp had a "duty to contribute unemployment benefits to former employees that are involuntarily terminated." (Resp. at 12.) This argument seems to be based not on any purported failure to make contributions required by law, but on the fact that Mikoda labeled Alvarez's termination a voluntary quit, and in doing so, attempted to prevent him from collecting unemployment. This argument is addressed in footnote 13, and does not warrant further discussion.

12

The court's jurisdiction over Alvarez's negligent supervision claim is supplemental under 28 U.S.C. § 1367(a). (Sec. Am. Compl. ¶ 2.) Where a state law claim raises a novel issue of state law, the court has discretion to decline to exercise supplemental jurisdiction over the claim. 28 U.S.C. § 1367(c); *Quinn v. Vill. of Elk Grove Vill. Bd. of Fire & Police Comm'rs*, No. 01 C 8504, 2002 WL 47157, at *2 (N.D. Ill. Jan. 11, 2002). Courts generally decline to exercise supplemental jurisdiction if the issue of state law is one of first impression. *Quinn*, 2002 WL 47157 at *2. Here, Alvarez's claim presents a question of first impression for Illinois courts, and thus presents a novel issue of state law. The court therefore opts not to exercise supplemental jurisdiction over the claim.

Count III is dismissed.

### C. Motion to Strike Allegations from Second Amended Complaint

Defendants also ask the court to strike certain allegations from the complaint pursuant to Fed. R. Civ. P. 12(f), claiming that the allegations constitute redundant, immaterial, impertinent or scandalous matter. For example, defendants ask the court to strike allegations that the action is brought "pursuant to the Illinois state laws of tortious interference with a contractual relationship and negligent supervision," that the court has supplemental jurisdiction, and that Hi-Temp's parent company operates in 26 states as well as Mexico and Canada, and has net sales in excess of $600 million. (Sec. Am. Compl. ¶¶ 1, 2, and 5.)

When ruling on a Rule 12(f) motion to strike, the court has "considerable discretion." *Videojet Sys. Int'l, Inc. v. Inkjet, Inc.*, No. 95 C 7016, 1997 WL 124259, at *3 (N.D. Ill. Mar. 17, 1997). Moreover, "'as a general matter, motions to strike . . . under Rule 12(f) are disfavored.'" *Id.* There is nothing scandalous or prejudicial about any of the challenged allegations. While

13

some of the challenged allegations may be redundant or superfluous, this court is capable of disregarding such allegations. The motion to strike is therefore denied.

## II. Conclusion

Defendants' motion to strike certain paragraphs and dismiss counts II and III of plaintiff's second amended complaint is granted in part and denied in part. Counts II and III are both dismissed, primarily on preemption grounds. To the extent plaintiff's claim in Count III is based on a novel application of the common law tort of negligent supervision, which is not subject to preemption, the court declines to exercise supplemental jurisdiction over that claim. Finally, defendants' motion to strike is denied.

ENTERED:

*Nan R. Nolan*

NAN R. NOLAN

United States Magistrate Judge

Dated: March 23, 2004

14